IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HECTOR IVAN FONSECA-MACIAS,<br><br>Defendant. | **ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE)**<br><br>Case No. 2:15-cr-00518-RJS<br><br>Chief Judge Robert J. Shelby |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☐ GRANTED

  ☐ The defendant's previously imposed sentence of imprisonment of _____ is reduced to _____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

  ☐ Time served.

   If the defendant's sentence is reduced to time served:

    ☐ This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made,

1

and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☐ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of ___ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☐ The defendant's previously imposed conditions of supervised release are modified as follows:

_____.

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED (Optional)

A court may only consider a defendant's motion if the defendant has fully exhausted all administrative remedies or if thirty days have lapsed without a response since the defendant has petitioned the warden for compassionate release. 18 U.S.C. § 3582(c)(1)(A). On March 4, 2021, Defendant Hector Fonseca-Macias submitted an initial request for compassionate release. *See* Dkt. 59 (Motion) at 11. The Warden has not responded to Fonseca's request. *Id.* More than thirty days have lapsed without a response. Fonseca then filed a First Step Act Motion for Compassionate Release with this court on April 30, 2021, which is now ripe for review. *See id.*

A court may grant a motion for compassionate release and reduce a defendant's sentence if three requirements are met:

> (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

*United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The Tenth Circuit recently concluded, "the Sentencing Commission's

existing policy statement [USSG § 1B1.13] is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants." *United States v. Carr*, No. 20-1152, 2021 WL 1400705, at *4 (10th Cir. 2021) (citing *United States v. McGee*, 2021 WL 1168980, at *12 (10th Cir. 2021); *United States v. Maumau*, 2021 WL 1217855, at *12). Where the existing policy statement is inapplicable to the instant Motion, "the district court has the authority to exercise its independent discretion to define the term 'extraordinary and compelling reasons.'" *Carr*, 2021 WL 1400705, at *4 (citing *McGee*, 2021 WL 1168980, at *8; *Maumau*, 2021 WL 1217855, at *9).

Although the Sentencing Commission's policy statement is not binding, it does provide helpful guidance concerning certain categories of medical conditions that qualify as "extraordinary and compelling reasons." *See* USSG § 1B1.13, cmt. n.1(A). Those categories include any "serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. n.1(A)(i–ii). If an inmate has been diagnosed with a condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of "extraordinary and compelling reasons." Dkt. 67 (Opposition) at 3.

Fonseca argues there are two "extraordinary and compelling" reasons warranting a reduction of his sentence: (1) his ineligibility for early release through "traditional means;" and (2) the mismanagement of his medical conditions by the BOP. Dkt. 59 at 12–13.

Fonseca contends his non-citizen status prevents him from being eligible for a Residential Drug Abuse Program (RDAP) or home confinement. Dkt. 59 at 13. Fonseca argues his ineligibility is a "extraordinary and compelling" reason to reduce his sentence because if he did

4

not have an immigration detainer "he would have been eligible to join and receive a sentence reduction" of a year for completing a RDAP. *Id.* He further argues, without the detainer he could be eligible for home confinement on March 29, 2022. *Id.* at 1, 13. The government does not address this argument in its opposition.

Fonseca also argues the BOP has mismanaged his medical conditions because he is currently prescribed Metformin to treat his diabetes and the BOP denied his request to change medications. Dkt. 59 at 12–13. The government contends that continuing to provide Metformin does not constitute mismanagement of Fonseca's medical conditions. Dkt. 67 (Opp.) at 4. The Food and Drug Administration (FDA) has released several press announcements over the last year alerting patients and health care providers of voluntary recalls by select manufacturers of extended-release Metformin products because of the detection of high levels of N-Nitrosodimethylamine (NDMA).[1] According to the FDA, NDMA "may increase the risk of cancer if people are exposed to them above acceptable levels and over long periods of time[.]"[2] As the United States articulates in its Opposition, notwithstanding the voluntary recalls, the "FDA recommends that health care professionals continue to prescribe metformin when clinically appropriate; FDA testing has not shown NDMA in immediate release (IR) metformin products (the most commonly prescribed type of metformin)."[3] Dkt. 67 at 4. While the court would be concerned if the metformin product currently provided to Fonseca by the BOP was a

---

[1] *See* United States Food and Drug Administration, *FDA Updates and Press Announcements on NDMA in Metformin*, https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-metformin (last updated January 6, 2021).

[2] *See* United States Food and Drug Administration, *Information about Nitrosamine Impurities in Medications*, https://www.fda.gov/drugs/drug-safety-and-availability/information-about-nitrosamine-impurities-medications (last updated February 24, 2021).

[3] *See* United States Food and Drug Administration, *FDA Updates and Press Announcements on NDMA in Metformin*, January 6, 2021: Update – Nostrum Laboratories voluntarily recalls an additional lot of extended-release metformin, https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-metformin (last updated January 6, 2021).

recalled brand of extended-release metformin, he has not demonstrated that is the case. With the argument currently before the court, Fonseca has failed to demonstrate the BOP is mismanaging his medical conditions.

In a footnote, Fonseca further argues his medical conditions put him "at a higher risk to contract and die from COVID-19[.]" Dkt. 59 at 7 n.3. Fonseca suffers from the following medical conditions: type II diabetes mellitus, arteriosclerotic heart disease, hyperlipidemia, gastroesophageal reflux disease, hypothyroidism, obesity, and hypertension. Dkt. 59 (Motion) at 12. According to the CDC, adults of any age with type II diabetes mellitus, obesity, and/or hypertension are at increased risk of severe illness from the virus that causes COVID-19.[4] Further, Fonseca has not yet been offered a COVID-19 vaccination. Dkt. 67 (Opp.) at 3. The government does not dispute Fonseca's medical conditions satisfy the requirement of "extraordinary and compelling reasons," because the conditions put him at an elevated risk of serious illness from COVID-19. Dkt. 67 (Opp.) at 4. Fonseca has therefore articulated several medical conditions, based on his type II diabetes, obesity, and hypertension, which satisfy the standard of "extraordinary and compelling reasons." Notwithstanding these conditions, the court must still consider the applicable factors in 18 U.S.C. § 3553(a) before granting a motion for compassionate release.

After a consideration of these factors, the court concludes a sentence reduction is not warranted here. Fonseca is currently serving a 108-month sentence for conspiracy to distribute methamphetamine and conspiracy to commit money laundering and has a criminal history that includes violent conduct and drug-related offenses. This sentence reflects the seriousness of his

---

[4] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated May 13, 2021).

conduct as well as his criminal history. This sentence is necessary to provide deterrence to Fonseca and others, and to protect the public. Fonseca's only argument as to why he will not put the public in danger is that he will be deported upon release. *See* Dkt. 59 at 16. This argument, even with Fonseca's demonstration of rehabilitation while in prison, is insufficient to warrant a sentence reduction or release.

Moreover, Fonseca's release plan is insufficient to support release based on his medical conditions that put him at an increased risk of severe illness from the virus that causes COVID-19. Dkt. 59 at 16. Fonseca states "If released, [he] would first spend time in the Bureau of Immigration and Customs Enforcement before deported to Mexico." *Id.* He does not specify how his release to ICE would reduce his risk of exposure to COVID-19. *See id.* To the contrary, several federal district courts have recognized the increased risk of exposure to the virus in ICE custody. *See, e.g., United States v. Chavez*, Case No. 1:95-cr-00361, 2020 WL 2322917 (S.D. Fla. May 11, 2020) (noting that "immigration detention facilities, like prisons, have had confirmed cases of COVID-19 and are implementing measures to respond to the spread of the disease in their populations" and that "the [c]ourt has been presented with no information to indicate that [defendant] has less of a likelihood of exposure to COVID-19 at an immigration detention than" in prison). To address his medical concerns after he has been removed, Fonseca asserts he "has access to medical care and the assistance of his family." Dkt. 59 at 16. This vague statement is not enough. Fonseca does not identify how he will access the medication required for his conditions or how his release would reduce his risk of exposure to COVID-19.

The court acknowledges and commends Fonseca's academic accomplishments, including his participation in substance abuse education courses and earning his GED. But release is not appropriate at this time.

☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

## CONCLUSION

For the reasons explained above, Defendant's Motion is DENIED.[5]

**SO ORDERED** this 6th day of August 2021.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[5] Dkt. 59.